**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION**

**RAY WASHINGTON, JR.,**

       **Petitioner,**

**v.**                                      **Criminal Action No. 4:01cr97
Civil Action No. 4:04cv70**

**UNITED STATES OF AMERICA,**

       **Respondent.**

<u>**ORDER and OPINION**</u>

Pending before the court is a Motion to Vacate, Set Aside or Correct a Sentence Pursuant to Title 28, United States Code, Section 2255 ("petition"), filed by Ray Washington, Jr., ("petitioner"), on June 3, 2004.  By order dated June 9, 2004, the court directed the government to file a response to the petition.  The government filed a response on August 9, 2004.  The court reviewed the petition and the response and, as articulated in an order entered on November 18, 2004, determined that additional briefing was necessary.  The government submitted a supplemental brief on December 13, 2004, and the petitioner submitted a supplemental brief on January 3, 2005.  The court has carefully considered all the materials before it and finds that a hearing is not necessary for the resolution of the issues presented in the petition.  For the reasons to follow, the court **DENIES** and **DISMISSES** the petition.

I. Background

The relevant procedural history of the petitioner's case is reviewed in greater detail in the court's prior order of November 18, 2004, and a lengthy reiteration is not necessary.  In brief, the petitioner pled guilty on November 1, 2001 to Counts 14 and 19 of a forty-six count indictment

1

that charged him with violations of various federal firearm laws.  Counts 14 and 19 charged the

petitioner with two separate acts of possession of a firearm after having been previously

convicted of a crime punishable by more than one year, in violation of 18 U.S.C. § 922(g)(1).

The Plea Agreement entered into by the petitioner and the government included waivers

of the petitioner's rights to appeal his sentence and to make a collateral attack pursuant to 28

U.S.C. § 2255.  On March 11, 2002, the court sentenced the petitioner to a term of imprisonment

of 188 months, composed of 120 months on Count 14 and an additional 68 months on Count 19,

to run concurrent with an undischarged state sentence.  During the sentencing hearing, the

government moved to dismiss the remaining counts of the indictment, including a number of

counts alleging that the petitioner caused another individual to make a false statement on a

firearm transaction record, in violation of 18 U.S.C. § 924(a)(1)(A).

The predicate conviction that supported Counts 14 and 19 was a January 3, 1991 Virginia

state court conviction for the unauthorized use of a motor vehicle.  The petitioner was seventeen

(17) years old at the time of the offense, and he was found guilty and sentenced in the Juvenile

and Domestic Relations District Court for the City of Newport News, Virginia.  The defendant

was not tried in an adult capacity, thus, the disposition was characterized as a juvenile

adjudication pursuant to Virginia law.  See Va. Code. Ann. § 16.1-308 (distinguishing juveniles

adjudicated as delinquent from those tried as adults).

On February 20, 2004, the United States Court of Appeals for the Fourth Circuit issued

its decision in United States v. Walters, 359 F.3d 340 (4th Cir. 2004).  In this decision, the Court

of Appeals determined that a juvenile adjudication was not a conviction under Virginia law and,

as such, could not serve as the "underlying conviction which subjects an individual to penalty

under 18 U.S.C. § 922(g)(1)." Walters, 359 F.3d at 346.

In the original section 2255 petition, filed on June 4, 2004, the petitioner claimed that, in view of the decision of the Court of Appeals in Walters, his 1991 juvenile adjudication could no longer serve as a proper predicate conviction in support of the section 922(g)(1) charges in Counts 14 and 19. As he failed to raise this argument before the trial court or on direct appeal, however, the petitioner correctly recognized that he must either establish cause and prejudice or a miscarriage of justice in order excuse his double procedural default. See Bousley v. United States, 523 U.S. 614, 621-22 (1998). In his petition, the petitioner claimed that he could overcome procedural default by establishing the miscarriage of justice prong; specifically, he maintained that his procedural default should be excused because he is actually innocent of the section 922(g)(1) offenses to which he pled guilty.

The government's August 9, 2004 response offered a number of arguments as to why the section 2255 petition should be denied and dismissed. First, the government argued that the petition was not filed within the one-year period of limitation set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 110 Stat. 1214 (1996). Next, the government claimed that the decision of the Fourth Circuit in Walters did not apply retroactively to the petitioner's case. As discussed in the court's order of November 18, 2004, the government relied on the retroactivity analysis articulated in Teauge v. Lane, 489 U.S. 288, 307 (1989) and its progeny, which is generally designed to handle retroactivity in the context of new procedural rules.

In its November 18, 2004 order, the court determined that the decision in Walters did not adopt a new procedural rule, rather it clarified the scope of 18 U.S.C. § 922(g)(1) as applied to

3

criminal offenses defined under Virginia law as juvenile adjudications.  See Walters, 359 F.3d at 341-42, 347.  As the government's response did not apply the correct retroactivity analysis, and as the court determined that the retroactivity issue could impact both the possibility of equitable tolling of the AEDPA one-year limitation period and the petitioner's ability to overcome procedural default by demonstrating actual innocence, the court ordered further briefing from the government and permitted the petitioner an opportunity to respond.

In its November 18, 2004 order, the court recognized and so advised the parties that even if the Walters decision did prove to be retroactive, not every such decision can be used to invalidate a conviction or sentence that is already final.  See United States v. Tayman, 885 F. Supp. 832, 843 (E.D. Va. 1995).  The court observed that either the operation of the AEDPA's one-year limitation period or the doctrine of procedural default could still act to prevent an award of collateral relief unless, in the case of the AEDPA limitation period, the decision in Walters operated to extend the petitioner's one-year period to seek collateral relief, or, in the case of procedural default, a miscarriage of justice in the form of the petitioner's actual innocence were established.  See 28 U.S.C. § 2255; Bousley, 523 U.S. at 622; Murray v. Carrier, 477 U.S. 478, 485 (1986).  The court determined that the petitioner had addressed neither the timeliness issue or made the required showing that he was actually innocent of all of the charges brought against him, including those dismissed by motion of the government during sentencing.

Additionally, the court expressed concern over a provision of the Plea Agreement whereby the petitioner waived his right to file a section 2255 petition.  As of the date of the November 18, 2004 order, the Fourth Circuit had not articulated a clear position on the validity of such waivers, although the court observed that the petitioner had made no effort to argue or

show that this waiver was invalid.

Finally, although it was clear from the substance of the government's response that the government urged the court to deny collateral relief, the concluding language in the response mistakenly stated that "the petitioner's motion should be granted."  In a letter to the court in reply to the government's August 9, 2004 response, the petitioner seized on this concluding language and claimed that the government had agreed that the section 2255 petition should be granted. This confusion also played a role in the court's decision to order supplemental briefing.

Accordingly, the court determined that supplemental briefing was required of both parties to address the following issues: (1) whether the petition was timely filed; (2) whether the petitioner could overcome the barriers of procedural default by establishing cause or prejudice or actual innocence; (3) whether the Fourth Circuit's decision in Walters has the claimed retroactive effect under the correct retroactivity analysis; and (4) the impact of the section 2255 waiver contained in the Plea Agreement

## II. Discussion

The issues raised in the instant petition are somewhat removed from those ordinarily raised in the section 2255 petitions that this court regularly encounters.  The petitioner bases his claim on the retroactive application of a specific holding in a recent Fourth Circuit decision that interprets Virginia law with respect to a federal statute.  Unlike many claims of actual innocence where a petitioner maintains that he did not do the criminal acts charged against him, in this case, the petitioner admits that he did the acts charged, but that these acts are not criminal in the aftermath of the decision of the Court of Appeals in Walters.  The concern of the court is rather simply stated, if not so simply analyzed: If Walters operates retroactively such that the

petitioner's juvenile adjudication did not support his section 922(g)(1) convictions, then there is a real danger that the petitioner is imprisoned for conduct that federal law does not make criminal.  See Bousley, 523 U.S. at 620-21.

Arrayed against this broad concern, however, stand a number of seemingly minor, yet significant, procedural ones: That a petition for collateral attack must be timely in order to serve the purposes of finality and confidence in the conviction; that the petitioner must demonstrate cause and actual prejudice or a miscarriage of justice in order to excuse his failure to raise a claim on direct review; that the necessary showing to establish actual innocence requires more than legal innocence and extends to those charges that may have been dismissed pursuant to a plea agreement; and, finally, that plea agreements constitute bargained for and enforceable exchanges, including any waiver provisions, that both the government and defendants must be held to in order for the criminal justice system to function with any degree of economy and confidence.  The Supreme Court has indicated that these procedural concerns, which largely serve the goal of finality, apply with greater force to a request for collateral relief stemming from a guilty plea.  See United States v. Timmreck, 441 U.S. 780, 784 (1979) (noting that concern with finality of conviction for purposes of limiting collateral attack has special force with respect to convictions based on guilty pleas).

The court turns now to the discussion of these issues that have been presented in the supplemental briefs of the parties.  In doing so, the court concludes that the petitioner has failed to overcome any of the procedural hurdles that bar review of the merits of his petition.

A. Timeliness of Petition

1. AEDPA Limitation Period

In its supplemental brief, filed on December 13, 2004, the government reiterates its assertion that the petition is time-barred by the AEDPA statute of limitations.  The government argues that the petitioner's conviction became final on March 11, 2003, one year from the entry of judgment against him on March 11, 2002.  The petitioner, in his supplemental brief, responds that his petition was timely filed within one year of the <u>Walters</u> decision and that, in the event the court determines the petition to not be timely under the AEDPA, the doctrine of equitable tolling should apply.

The AEPDA made substantial changes to section 2255.  <u>See</u> 110 Stat. 1214 (1996). Most importantly, for purposes of addressing this petition, the AEDPA implemented a one-year limitation period applicable to the filing of section 2255 petitions.  In relevant part, section 2255 provides:

> A 1-year period of limitation shall apply to a motion under this section.  The limitation period shall run from the latest of –
>
> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due

7

diligence.

28 U.S.C. § 2255.

Although the government asserts that the petitioner's conviction became final on March 11, 2002, the court observes that it actually became final ten (10) days later, when the time period for filing a notice of appeal expired.  See Clay v. United States, 537 U.S. 522, 527 (2003) (noting that finality attaches when the time for seeking review expires); Alston v. United States, 235 F. Supp. 2d 477, 478 (D.S.C. 2002) (stating that conviction becomes final ten days after sentencing if no appeal is noticed).  Thus, the conviction became final on or about March 25, 2002.

Beyond the date that the petitioner's conviction became final, none of the remaining circumstances apply to extend the time for filing a section 2255 petition.  The government did not impede the petitioner from filing a petition, and the facts supporting the petitioner's claim were certainly apparent prior to his conviction.  Although the petitioner's claim relies on an intervening clarification of existing law, this clarification was not in the form of a right newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review.  See Nichols v. United States, 285 F.3d 445, 447 (6th Cir. 2002) (finding that express language of section 2255(3) limits application to decisions of Supreme Court).

The petitioner's argument that his petition was timely filed because it was filed within one year of the Walters decision does not extend the triggering date beyond the date his conviction became final, because this circumstance specifically requires the recognition of a new right by the Supreme Court that has been made applicable to cases on collateral review.  See 28 U.S.C. § 2255(3).  Whatever retroactive effect Walters may have, it does not operate to extend the starting date for the purposes of the AEDPA as it is not a decision of the Supreme Court.

8

Accordingly, the date that the petitioner's conviction became final, on or about March 25, 2002, is the triggering date for purposes of the AEDPA.  The petitioner had one year from this date, until March 25, 2003, to file a timely petition for collateral relief.   As the instant petition was not filed until June 4, 2004, it is untimely by some fourteen months.

2. Equitable Tolling

In his supplemental brief, the petitioner also claims that the doctrine of equitable tolling applies to extend his filing period because extraordinary circumstances beyond his control made it impossible for him to file his claim in a timely manner.  Specifically, the petitioner argues that the Walters decision was not decided until February 2004, making the instant claim unavailable until that time.

The court does have the authority to toll the application, under equitable principles, of the statute of limitation for a section 2255 petition.  See Harris v. Hutchinson, 209 F.3d 325, 328-29 (4th Cir. 2000).  The Fourth Circuit has held that the doctrine of equitable tolling is generally appropriate in two distinct situations; where the plaintiff was prevented from asserting his claim by some wrongful conduct on the part of the defendant, or where some extraordinary circumstances beyond the petitioner's control made it impossible for him to file the claims in a timely manner.  Id. at 330.

Principles of equitable tolling do not extend to garden variety claims of excusable neglect.  Rouse v. Lee, 339 F.3d 238, 246 (4th Cir. 2003).  The petitioner makes no allegation that the government prevented him from asserting his claims.  Therefore, equitable tolling "is appropriate when, but only when, 'extraordinary circumstances beyond [the petitioner's] control prevented him from complying with the statutory time limit.'" Spencer v. Sutton, 239 F.3d 626,

630 (4th Cir. 2001) (quoting Harris, 209 F.3d at 330).  The equitable tolling test adopted by the

Fourth Circuit does not require consideration of the petitioner's underlying claims.  See Rouse,

339 F.3d at 251.  Moreover, "'a petitioner's claims of actual innocence are [not] relevant to the

timeliness of his petition.'"  United States v. Riggs, 314 F.3d 796 (5th Cir. 2002) (citing Felder v.

Johnson, 204 F.3d 168, 171 (5th Cir. 2000)).

　　　The petitioner has demonstrated no such extraordinary circumstances beyond excusable

neglect that warrant the application of the equitable tolling doctrine.  See Rouse, 339 F.3d at 246.

Although the court need not consider the petitioner's underlying claims in reaching this decision,

in this case, the underlying claim of the retroactive operation of Walters is directly connected to

the petitioner's argument that he could not have acted to file his petition until the Court of

Appeals issued its decision in February 2004.  The court finds this argument to be unavailing.

　　　Even though the decision of the Court of Appeals in Walters occurred subsequent to the

petitioner's conviction and sentencing, the three district court decisions that were the subject of

appellate review in Walters were all issued shortly after the petitioner was sentenced.  See United

States v. Davis, 234 F. Supp. 2d 601 (E.D. Va. Dec. 19, 2002); United States v. Crudup, 225 F.

Supp. 2d 688 (E.D. Va. Oct. 10, 2002); United States v. Walters, 225 F. Supp. 2d 684 (E.D. Va.

Oct. 4, 2002).  In two of these cases, the indictments of the defendants were dismissed by the

district court on the very basis that a juvenile adjudication could not serve as a section 922(g)(1)

predicate conviction.  See Davis, 234 F. Supp. at 604-06; Walters, 225 F. Supp. at 686.  Thus, the

underlying legal basis for the petitioner's present claim that his juvenile adjudication could not

have served as a predicate felony conviction under 18 U.S.C. § 922 (g) was available at the time

of his sentencing and the specific district court decisions were available well within the one-year

period after his conviction became final.  See Reed v. Ross, 468 U.S. 1, 13-14 (1984).

This is not to suggest that the petitioner's counsel should have or could have relied on the respective decisions in Davis, Crudup or Walters, as each of these decisions was issued after the petitioner pleaded guilty and was sentenced.  Moreover, the petitioner and his counsel, in going forward with his plea of guilty on the two charges under 18 U.S.C. § 922(g), obviously elected to admit his guilt rather than to challenge the sufficiency of the indictment, as did the defendants in Davis, Crudup and Walters.  These three decisions, coming shortly after the petitioner pleaded guilty and was sentenced, however, serve as examples that the legal basis for a challenge to the use of the petitioner's juvenile adjudication as a predicate conviction for the purposes of section 922(g) was not "so novel that its legal basis [was] not reasonably available to counsel."  Id. at 16 n.49.

Accordingly, the court cannot find that extraordinary circumstances beyond the petitioner's control made it for him impossible to file a timely section 2255 petition raising the issue of whether a Virginia juvenile adjudication properly serves as a predicate conviction for the purposes of 18 U.S.C. § 922(g).  See Harris, 209 F.3d at 330.  Even if the petitioner or his counsel was not aware of these district court decisions, the Fourth Circuit has indicated "ignorance of the law is not a basis for equitable tolling."[1]  United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004).   As the petitioner has not made the required showing to support equitable tolling, despite having proper notice and the opportunity to do so by this court's order of November 18, 2004, the court finds that equitable tolling is not warranted in this case and that

---

[1]The court expresses some skepticism with respect to this possibility.  Each of these cases was published, and each was decided in the same district in which the petitioner was convicted.

11

the petition is barred by the AEDPA statute of limitations.  See Spencer, 239 F.3d at 630.

B. Procedural Default

The government next claims that the petitioner's Walters claim is barred by the doctrine of procedural default.  When claims asserted in a section 2255 petition were not raised at sentencing or on direct appeal, a petitioner must ordinarily satisfy the requirements of a two-part "cause and actual prejudice" test to obtain relief.  See United States v. Frady, 456 U.S. 152, 167-168 (1982).  Under that test, "to obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains."  Id. at 167-68.  This standard presents "a significantly higher hurdle than would exist on direct appeal."  Id. at 166.  The Frady standard even extends to constitutional claims.  See Murray v. Carrier, 477 U.S. 478, 493 (1986).

The procedural default rule is a doctrine adhered to by courts to both "conserve judicial resources and to respect the law's important interest in the finality of judgments."  Massaro v. United States, 538 U.S. 500, 503 (2003).  "No criminal-law system can function without rules of procedure conjoined with a rule of finality.  Evidence not introduced, or objections not made, at the appropriate time cannot be brought forward to reopen the conviction after judgment has been rendered."  See Bousley, 523 U.S. at 629-30 (Scalia, J. dissenting).

To the extent, then, that the petitioner has not raised the claim presented in the petition on direct appeal, he is in procedural default unless he can first establish cause for failing to do so and prejudice as a result.  The opportunity to surmount procedural default is one of the few "generous exceptions to the rule of finality."  Id.  The existence of cause for a procedural default

12

must turn on something external to the defense, "such as the novelty of the claim or the denial of effective assistance of counsel." United States v.Mikalajunas, 186 F.3d 490, 493 (4th Cir. 1999).

1. Cause and Actual Prejudice

The petitioner has not attempted to make a showing of cause and actual prejudice to relieve his default. It is unlikely that he could do so, even though the Walters decision occurred subsequent to his conviction and sentencing. While a claim that is so novel that its legal basis is not reasonably available to counsel may constitute cause for a procedural default, the petitioner's claim does not qualify as such. See Reed, 468 U.S. at 16. The Fourth Circuit in Walters, reviewed three district court decisions that were all issued shortly after the petitioner was sentenced. See United States v. Davis, 234 F. Supp. 2d 601 (E.D. Va. Dec. 19, 2002); United States v. Crudup, 225 F. Supp. 2d 688 (E.D. Va. Oct. 10, 2002); United States v. Walters, 225 F. Supp. 2d 684 (E.D. Va. Oct. 4, 2002). Although these decisions were obviously not available to the petitioner or his counsel at the time of his guilty plea or sentencing, the analyses contained in these decisions demonstrate that the basis of the petitioner's claim concerning the use of his juvenile adjudication as a predicate conviction under 18 U.S.C. § 922(g), whether he chose to avail himself of it or not, was at least available generally at the time of his sentencing and during the time he could have appealed his conviction or sentence.

Only a claim that "is so novel that its legal basis is not reasonably available to counsel" may constitute cause for a procedural default. Reed, 468 U.S. at 16. The petitioner must show that the decision of the Court of Appeals Walters was sufficiently novel such that his attorney reasonably did not or could not have anticipated it. See Tayman, 885 F. Supp. at 847. "This

determination is a wholly objective one, requiring only an assessment of the relevant legal authorities existing at the time" of the petitioner's conviction and sentencing.  Id.

The district court decisions in Davis, Crudup, and Walters, all of which were issued shortly after the petitioner's conviction, illustrate that the basis for the petitioner's instant claim was not novel.  See Bousley, 523 U.S. at 623 n.2.  Each of the district court decisions in Davis, Crudup and Walters, as well as the Fourth Circuit's decision in Walters, relied on interpretations of the same existing federal and Virginia statutes, particularly Virginia Code Section 16.1-308, and also referenced established Fourth Circuit case law directing that the language in 18 U.S.C. § 921(a)(20), as also used in 18 U.S.C. § 922(g), referring to conviction of "a crime punishable by imprisonment for a term exceeding one year" is to be determined by the law of the prosecuting jurisdiction.  See Walters, 359 F.3d at 344 (citing United States v. Lender, 985 F.2d 151, 156 (4th Cir. 1993)); Davis, 234 F. Supp. 2d at 604 (citing United States v. Lender, 985 F.2d 151, 156 (4th Cir. 1993)); Crudup, 225 F. Supp. 2d at 689 (citing Va. Code Ann. § 16.1-308); Walters, 225 F. Supp. 2d at 686 (citing United States v. Lender, 985 F.2d 151, 156 (4th Cir. 1993)).  Although these decisions were not available at the time of the petitioner's sentencing, the underlying relevant legal authorities that would have supported a challenge to the petitioner's juvenile adjudication did exist at the time of his conviction and sentencing.  Accordingly, the court concludes that the legal basis for the petitioner's claim was not so novel that it can serve to establish cause for his procedural default.  See Bousley, 523 U.S. at 623 n.2.

Even had the petitioner argued, and the record supported, the possibility that his counsel was unaware of the basis for the claim at the time of the petitioner's plea colloquy or sentencing, "'where the basis of a . . . claim is available, and other defense counsel have perceived and

litigated that claim, the demands of comity and finality counsel against labeling alleged unawareness of the objection as cause for a procedural default.'" Id. (quoting Engle v. Isaac, 456 U.S. 107, 134 (1982)).  Again, as discussed in reference to the petitioner's claim of equitable tolling, the fact that the basis for the claim was available does not mean that the petitioner's counsel erred in failing to raise it.  Obviously, the petitioner and his counsel could not have relied upon the district court decisions in Davis, Crudup and Walters, as each was issued subsequent to his sentencing.  Moreover, as evidenced by the split in these decisions, the law concerning the status of the petitioner's juvenile adjudication was not firmly in place until the Fourth Circuit's decision in Walters.  The above discussion establishes only that the decision of the Court of Appeals in Walters, upon which the petitioner bases his instant claim, was neither so innovative or previously unimaginable that it can serve as cause for his procedural default of this issue.  See Bousley, 523 U.S. at 623 n.2.  Finally, even assuming that the petitioner had argued that raising the issue of his juvenile adjudication would have been futile prior to the Fourth Circuit's decision in Walters, this argument too would be without merit.  "[F]utility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time." Engle v. Isaac, 456 U.S. 107, 130, n.35 (1982).  Therefore, the petitioner is unable to establish cause for his default.

2. Actual Innocence

If the petitioner is unable to show cause and prejudice, he may still be able to bring a collateral attack by demonstrating that a miscarriage of justice would result from refusal of the court to entertain the collateral attack.  Bousley, 523 U.S. at 493.  In order to demonstrate that a miscarriage of justice would result, the petitioner must show his actual innocence by clear and

convincing evidence.  See Mikalajunas, 186 F.3d at 493; accord Murray, 477 U.S. at 496.  In the

case of actual innocence, "the principles of comity and finality yield to the imperative of

correcting a fundamentally unjust incarceration."  Rodgers v. Angelone, 113 F. Supp. 2d 922,

932 (E.D. Va. 2000) (citing Engle, 456 U.S. at 135).

a. Retroactivity of Walters

Although the court must determine whether the petitioner can overcome procedural

default prior to proceeding to the merits of his claim, the petitioner relies solely on the claimed

retroactive effect of Walters to establish that he is actually innocent, thus, the substance of his

claim does intrude into the procedural analysis to some degree.  See Bousley, 523 U.S. at 620-21.

Thus, at the outset, the court must determine if Walters could have retroactive effect.

The government, in its supplemental brief, recognizes that the petitioner's claim is not

barred by the provisions of the Teague doctrine that limits the retroactive effect of criminal

procedural rules.  See Teague, 489 U.S. at 310.  As the government appears to concede, the

decision in Walters interpreted section 922(g)(1) to not extend to those individuals for which the

predicate conviction is a juvenile adjudication under Virginia law.  See Walters, 359 F.3d at 346.

The effect of this decision prohibits the application of 18 U.S.C. § 922(g)(1) from applying to

certain conduct and individuals.  See Walters, 359 F.3d at 346.  In short, Walters is plainly a

decision concerning substantive criminal law.  See Schriro v. Summerlin, 124 S. Ct. 2519, 2522

(2004) (finding that substantive rules include decisions narrowing scope of criminal statute by

interpreting its terms); Walters, 359 F.3d at 343 (noting that appeal presents issue of statutory

construction).

It is well-recognized "that judicial decisions, unlike legislative enactments, generally

16

apply retroactively as well as prospectively." Tayman, 885 F. Supp. at 836 (citing James B. Beam Distilling Co. v. Georgia, 501 U.S. 529, 535 (1991)); see also United States v. Ramey, 2000 U.S. App. Lexis 14316, *10 (4th Cir.) (finding that intervening change in law justified habeas relief).  This tradition stems from the notion that judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction.  Rivers v. Roadway Express, Inc., 511 U.S. 298, 311-12 (1994).

The Supreme Court further explained in Bousley v. United States, 523 U.S. 614 (1998), that the "distinction between substance and procedure is an important one in the habeas context." Bousley, 523 U.S. at 620.  This is due to the notion that judicial decisions "holding that a substantive federal criminal statute does not reach certain conduct . . . necessarily carry a significant risk that a defendant stands convicted of 'an act that the law does not make criminal.'" Id. (quoting Davis v. United States, 417 U.S. 333, 346 (1974)).

There is some question as to the retroactive effect of decisions by the lower appellate courts that interpret statutes; however, certain courts have adopted the practice of applying lower court decisions retroactively.  See United States v. McKie, 73 F.3d 1149, 1152-53 (D.C. Cir. 1996); Tayman, 885 F. Supp. at 836-37 (deciding that Fourth Circuit decision announced rule of substantive law that applied retroactively on collateral review).  Without the necessity of formally ruling on the issue, the court will assume, for the purposes of the following discussion on procedural default, that the decision of the Court of Appeals in Walters can operate retroactively.  The question, considering the hurdles of procedural default, is whether it should operate in the petitioner's case.  This question is not wholly separated from the effect Walters would have if it were to apply retroactively to the petitioner's case because the petitioner has

17

based his claim of actual innocence upon such retroactive operation.

The Supreme Court has explained that although a decision that interprets a substantive criminal statute is not subject to the Teague limits on retroactivity, "significant procedural hurdles" remain to the consideration of the merits of the petitioner's claim on collateral review. Bousley, 523 U.S. at 621.  Although it is clear that judicial decisions are to be given retroactive effect in all cases open on direct review, it is equally settled that not every retroactive decision can be used to invalidate a conviction or sentence that is already final.  See Tayman, 885 F. Supp. at 843 (citing James B. Beam Distilling, 501 U.S. at 535, 538); see also Harper v. Virginia Dep't of Taxation, 509 U.S. 86, 94-95(1993).  Habeas review is an extraordinary remedy that "'will not be allowed to do service for an appeal.'"  Reed v. Farley, 512 U.S. 339, 354 (1994) (quoting Sunal v. Large, 332 U.S. 174, 178 (1947)).

In this case, it is apparent that the petitioner cannot meet the cause and actual prejudice standard to overcome procedural default.  He is left to argue that the error in his indictment and guilty plea "has probably resulted in the conviction of one who is actually innocent."  Murray, 477 U.S. at 496.  To establish actual innocence, the petitioner must demonstrate that "in light of all the evidence it is more likely than not that no reasonable juror would have convicted him." Bousley, 523 U.S. at 623 (quoting Schlup v. Delo, 513 U.S. 298, 327-28 (1995)).  In this regard, actual innocence means factual innocence, not mere legal insufficiency.  Id.   The petitioner must not only demonstrate that he is actually innocent of the charges to which he pled but that his innocence extends to charges that the government has foregone in the course of plea bargaining. See id. at 624.

b. Effect of <u>Walters</u> on Charges in Indictment

The petitioner, in both his initial petition and in his supplemental brief, claims that, due to the retroactive operation of <u>Walters</u>, he is actually innocent of all of the counts in the indictment, including those that were dismissed by the government at sentencing. The government contends that the petitioner was indicted in a forty-six count indictment, of which he pled guilty to two charges. The government argues that the petitioner cannot establish his innocence of all of the dismissed counts, including a number of counts alleging that the petitioner caused another to falsify information on a firearms transaction (referred to as straw purchases) in violation of 18 U.S.C. § 924(a)(1)(A).

The petitioner's argument of actual innocence is premised on his belief that all of the counts in the indictment were predicated on his juvenile adjudication, which, as explained by <u>Walters</u>, could not serve as a predicate felony conviction within the meaning of 18 U.S.C. § 922(g)(1). Specifically, the petitioner contends that Counts 1-28 charged him with possession of a firearm as a convicted felon; Counts 29-45 with making false statements in firearms transactions about being a convicted felon; and Count 46 with being a felon in possession of ammunition. As the petitioner claims that all of these counts depend upon a predicate felony conviction, he asserts that in the aftermath of <u>Walters</u>, his juvenile adjudication does not provide the proper basis for the supporting predicate felony conviction.

Were the petitioner's version of the charges against him true, the court would find that the petitioner had made the necessary showing to establish actual innocence. In reviewing the indictment, however, it is clear to the court that there were a number of charges that did not depend upon the petitioner's prior juvenile adjudication. As the government references, Counts

29-43 all charged the petitioner with unlawfully and knowingly causing another to make a false statement and representation with respect to information required by law to be kept in the records of a federally licensed firearms dealer, in violation of 18 U.S.C. § 924(a)(1)(A).

Each count in this group, in nearly identical fashion with only the dates alleged varying, contends that the petitioner caused another individual to represent on an ATF Form 4473 that the other individual was the bona fide purchaser of a firearm, when in reality, the petitioner was the purchaser.  While the petitioner is correct that certain counts, namely Counts 44-45, do allege that the petitioner falsely represented on an ATF Form 4473 that he had not been convicted in a court of a crime for which he could have been imprisoned for more than one year, Counts 29-43 do not depend in any manner on the petitioner's prior juvenile adjudication.  See 18 U.S.C. § 924(a)(1)(A).

Counts 29-43 represent nearly a third of the charges brought in the indictment against the petitioner.  Each of these charges was dismissed at sentencing pursuant to the terms of the Plea Agreement that the petitioner entered into with the government.  In making a showing of actual innocence to overcome procedural default, the petitioner must establish his innocence even of the counts that the government agreed to forego as part of the Plea Agreement.  See Bousley, 523 U.S. at 623.  Despite being given notice and the opportunity to do so, the petitioner has failed to make this showing with respect to Counts 29-43.  Accordingly, even if the petition was timely, the court finds that the petitioner is not able to surmount the barrier of procedural default for the court to consider the merits of his claim.

c. Extent of Punishment

The court does recognize that collateral relief is also available in exceptional

20

circumstances to defendants who challenge only the extent of their punishment.  See United States v. Maybeck, 23 F.3d 888, 894 (4th Cir. 1994).  The petitioner has not made such an argument that his sentence would have been lower had he been convicted of the straw purchase charges brought under 18 U.S.C. § 924(a)(1)(A) rather than the charges brought under 18 U.S.C. § 922(g).  This is likely the result of the petitioner's mistaken belief that Walters would operate to invalidate all of the counts in the indictment, rather that just those that relied upon his juvenile adjudication.  As the court has explained above, this is not the case.

The court does observe, however, that had the petitioner advanced a challenge to the extent of his sentence, he could not establish that his sentence would have been any shorter under a conviction on the foregone charges.  At the outset, it does appear that this argument has more merit and traction than the argument that the petitioner is "actually innocent" of all the claims alleged against him in the indictment.  This appearance is due largely to the fact that the maximum period of imprisonment for a violation of 18 U.S.C. § 922(g) is ten (10) years, while the maximum period for a violation of section 18 U.S.C. § 924(a)(1)(A) is five (5) years.  This difference alone, however, does not establish that the petitioner's sentence would have been different had he been convicted under the section 924(a)(1)(A) charges that did not rely upon his juvenile adjudication.

In sentencing the defendant on the section 922(g) counts, the court looked to U.S.S.G. § 2K2.1 to determine a base offense level.  This is the same section of the Sentencing Guidelines that applies to a violation of section 924(a)(1)(A).  Initially, the Presentence Investigation Report ("PSR") determined that the petitioner's convictions resulted in a total offense level 14, a criminal history category of III, and a guideline range of 33-41 months.  This was based on

section 2K2.1(a)(6), which establishes a base offense level of fourteen "if the defendant . . . was a prohibited person at the time the defendant committed the instant offense." U.S.S.G. § 2K2.1(a)(6).

Pursuant to an objection from the government, however, the Probation Officer determined that the cross-reference contained in section 2K2.1(c) applied. Section 2K2.1(c)(1)(A) provides that when a firearm is used or possessed in connection with the commission or attempted commission of another crime, section 2X1.1 should be applied. U.S.S.G. § 2K2.1(c)(1)(A). Section 2X1.1 further provides that the base offense level and applicable enhancements of the substantive offense are to apply. U.S.S.G. 2X1.1.

In applying these various cross-references, the court determined that section 2A2.1 applied to determine the petitioner's base offense level, because the petitioner used or possessed a firearm in connection with the substantive offense of assault with intent to commit murder/attempted murder. See U.S.S.G. § 2A2.1. The factual allegations contained in the PSR revealed the defendant's involvement in a shooting incident on March 24, 2000. As a result of his role in this incident, the defendant was subsequently convicted in the Circuit Court for the City of Newport News, Virginia of four counts of malicious wounding and four counts of use or display of a firearm during the commission of a felony. Accordingly, the court applied section 2A2.1, and arrived at a base offense level of 28 plus a four level enhancement because the victim suffered permanent or life-threatening bodily injury. See U.S.S.G. § 2A2.1(b)(1)(A). Thus, the court calculated the petitioner's guideline level to be 32/III, with a resulting sentencing range of 151 to 188 months. In order to reach the maximum range permitted under the then-mandatory guidelines, the court sentenced the petitioner to 120 months on Count 14 and 68 months on

Count 19.

Even considering the possible invalidation of the convictions on Counts 14 and 19 and any other counts that relied on the juvenile adjudication, it appears to the court that the total sentence of 188 months would not necessarily be reduced.  See Tayman, 885 F. Supp. at 845 (noting that retroactive decision is of no benefit to defendant unless it establishes error in sentence); see also Maybeck, 23 F.3d at 894 (noting that actual innocence exception should not be available to defendant who, although actually innocent of committing an aggravating act, was not prejudiced by its inclusion in sentencing calculus).  The petitioner has not established that he would have been found actually innocent of Counts 29-43, which allege violations of 18 U.S.C. § 924(a)(1)(A).  See Bousley, 523 U.S. at 623.  In fact, the relevant conduct section of the PSR included all of the straw purchase transactions charged in Counts 29-43, including a March 16, 2000 straw purchase, charged as Count 40, which occurred roughly one week prior to the shooting incident that warranted the cross-reference to section 2A2.1.  The defendant did not object to the paragraphs of the PSR that alleged the acts charged as Counts 29-43 and the court, at sentencing, adopted the factual statements contained in the PSR as its findings of fact.

Accordingly, were the court to vacate the petitioner's conviction on Counts 14 and 19, a sufficient basis exists to determine that the defendant would have been found guilty on the foregone Counts 29-43.  See Bousley, 523 U.S. at 624 (noting that petitioner's showing of actual innocence must extend to foregone charges).  A conviction on these counts would have likely resulted in the same sentencing calculation: The initial application of section 2K2.1, the application of the cross-reference found in subsection 2K2.1(c)(1) to section 2X1.1 and ultimately to section 2A2.1, and the establishment of a base offense level of 32, with a criminal

23

history category of III and a resulting guideline range of 151-188 months.

In reviewing the record in this matter, the court has no reason to believe that it would have sentenced the petitioner any differently had he been convicted of the straw purchase counts, rather than on the felon in possession of a firearm counts.  See United States v. Ham, 1998 U.S. App. Lexis 5381, *3 (4th Cir. Mar. 20, 1998) (noting that cross-reference in section 2K2.1(c)(1) was applicable for section 924(a)(1)(A) violation upon finding that defendant used firearms in connection with commission of another offense).  At sentencing, the court reviewed on the record that the petitioner had been involved in multiple firearms transactions and shootings and presented a serious danger to the community.

The events that formed the basis for the petitioner's convictions in the Circuit Court for the City of Newport News, Virginia, were included as part of the relevant conduct in the instant case.  These events were particularly serious and played a role in the court's assessment of the petitioner's propensity for dangerousness.  On January 24, 2002, the defendant was convicted of four counts of malicious wounding and four counts of the use or display of a firearm during the commission of a felony.  He was sentenced in the state court to terms of fifteen (15) years with twelve (12) years suspended on each of the malicious wounding counts; to terms of five (5) years on three of the firearm convictions; and to a term of three (3) years on the final firearm conviction, for a total term of seventy-eight (78) years, with forty-eight (48) years suspended. These convictions stemmed from the defendant's involvement in the shooting of three individuals on March 24, 2000.  One of the victims was an eight-year old child who was hit with a stray bullet.  The alleged target of the March 24, 2000 shooting was subsequently killed from gunshot wounds on March 26, 2000.  On March 27, 2000, the petitioner visited the home of yet

another of the shooting victims and informed the victim's girlfriend that the petitioner was looking for the victim to finish the job.  These events formed the basis for the cross-reference to U.S.S.G. 2A2.1, which dramatically increased the petitioner's guideline range.

The court structured the petitioner's 188 month sentence so that it ran concurrently with his undischarged state sentence of thirty years because the state court offenses were part of the relevant conduct in this case.  See U.S.S.G. § 5G1.3(b).  Had the defendant been convicted of just four of the fifteen straw purchase counts alleged in Counts 29-43, the court would have been able to impose the same sentence, and likely would have owing to the severe danger that the petitioner presented to others.

In United States v. Maybeck,  23 F.3d 888, 894 (4th Cir. 1994), the Fourth Circuit, in the course of reviewing an actual innocence claim to an improperly assessed career offender sentencing enhancement, observed that even had defendant pled guilty to all the counts alleged in indictment, the maximum sentence he could have received would still be less than the minimum sentence for career offender in same circumstances.  See Maybeck, 23 F.3d at 894.  Thus, the court determined that prejudice caused by an erroneous career offender designation was apparent. Id.  Such prejudice is not apparent in the instant case as the petitioner could have received the same sentence had he pled guilty to just four of the fifteen straw purchaser counts.

Accordingly, the court finds that even had the petitioner advanced the argument that his sentence would have been reduced had the section 922(g) charges been removed from the indictment, the remaining counts of the indictment not invalidated by the Walters decision, and the similar sentencing criteria applicable to these counts, establish that exceptional circumstances do not exist that would permit a challenge to the extent of the petitioner's sentence.  See

Maybeck, 23 F.3d at 894.  As the petitioner has failed to demonstrate cause and actual prejudice, or that he experienced a miscarriage of justice because he is actually innocent, the court concludes that the doctrine of procedural default acts to bar further consideration of the petitioner's Walters claim.  See Bousley, 523 U.S. at 621.

C. Waiver of Right to Make Collateral Attack

The provision in the Plea Agreement whereby the petitioner waived his right to seek collateral review of his conviction or sentence is the final issue that the court directed the parties to discuss in their supplemental briefs.  The government argues that the Plea Agreement voluntarily entered into by the petitioner contained a waiver of his right to pursue collateral review of his conviction or sentence or the matter in which it was determined.  See Plea Agreement, pg. 3, para. 4.  The petitioner contends that to enforce this provision of the plea agreement is manifestly unjust, as it would result in the conviction of one who is actually innocent.

As explained above, the court has relied on other procedural grounds in determining that the petition should be dismissed.  The court's initial hesitation to rely on the collateral attack waiver, as expressed in its November 18, 2004 order, stemmed from an uncertainty in the law as to the validity of such waivers.  Recently, however, the Fourth Circuit has determined that such waivers can be valid such that the court would be on firmer ground in enforcing one. Nevertheless, the issue of the waiver remains relevant in another context because the above discussion of actual innocence relies on the validity of counts of the indictment that were dismissed pursuant to the Plea Agreement.  If the actual innocence exception did apply, such that the court could review the Walters claim and vacate the convictions on Counts 14 and 19, any

26

consideration of how to treat the foregone and dismissed counts of the indictment would

necessarily involve a review of the provision of the Plea Agreement that required their dismissal.

See Plea Agreement, pg. 3, para. 5.  The court could not hold the government to this portion of

the Plea Agreement without holding the petitioner to the collateral attack waiver.  Thus, for the

sake of completeness, the court believes it is necessary to address the scope and validity of this

waiver.

The Fourth Circuit, in United States v. Lemaster, 403 F.3d 216 (4th Cir. 2005) recently

considered the viability of a provision in a plea agreement, nearly identical to that in the instant

case, that purported to waive the right to seek collateral review.  In doing so, the Court of

Appeals reviewed the district court decision not to address the petitioner's habeas claims on their

merits based on the district court's determination that the defendant had knowingly and

voluntarily waived his right to collaterally attack his conviction and sentence.  See Lemaster, 403

F.3d at 219.

The Lemaster court reviewed the Supreme Court's observation "[t]he guilty plea and the

often concomitant plea bargain are important components of this country's criminal justice

system."  Blackledge v. Allison, 431 U.S. 63, 71 (1988).  The advantages of plea bargains "can

be secured, however, only if dispositions by guilty plea are accorded a great measure of finality."

Id.  The Fourth Circuit in Lemaster found no reason to distinguish the enforceability of a waiver

of direct-appeal rights, which has long been recognized as permissible, from a waiver of

collateral-attack rights in a plea agreement.  See Lemaster, 403 F.3d at 220.  The Lemaster court

concluded that collateral attack waivers are permissible as long as the waiver is knowing and

voluntary.  See id.

27

The petitioner has not claimed that this waiver was unknowing or involuntarily and ["i]t is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." Mabry v. Johnson, 467 U.S. 504, 508 (1984). Nor could the court entertain a claim based on an involuntary or unknowing guilty plea had it been raised as, pursuant to the above discussion, the petitioner would be in procedural default of an attack on his guilty plea. See Bousley, 523 U.S. at 621. As with the above claim as to the retroactivity of Walters, any challenge to the intelligence or voluntariness of the petitioner's guilty plea must overcome the procedural default caused by the failure to raise any objection before the trial court or on direct appeal. See Bousley, 523 U.S. at 621 (noting that the voluntariness and intelligence of guilty plea can be attacked on collateral review only if first challenged on direct review). "Indeed, 'the concern with finality served by limitation on collateral attack has special force with respect to convictions based on guilty pleas.'" Id. (quoting United States v. Timmreck, 441 U.S. 780, 784 (1979)).

For the reasons already explained, the petitioner has not made the necessary showing of cause and prejudice or actual innocence that would permit the court to consider any challenge to his guilty plea. See Bousley, 523 U.S. at 624 (noting that if petitioner cannot satisfy cause and prejudice standard, he must make showing of actual innocence in order to have collateral attack on guilty plea considered). The court observes that the petitioner affirmed during the plea hearing that he understood the waivers of his right to appeal and to bring a collateral challenge contained in the Plea Agreement and that he was entering into such agreement freely and voluntarily. See Blackledge, 431 U.S. at 74 (noting that representations of voluntariness and understanding given under oath during plea hearing carry great weight). Additionally, in the

waiver of appeal context, the Fourth Circuit has recognized that "'absent misrepresentation or other impermissible conduct by state agents, a voluntary plea of guilty made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise.'" United States v. Johnson, No. 04-4376 (4th Cir. June 8, 2005) (quoting Brady v. United States, 397 U.S. 742, 757 (1970)).  Even had the petitioner overcome the hurdle of procedural default, the court concludes that "supervening changes in the law" do not fall beyond the scope of his waiver of the right to bring a collateral attack.  See id. (citing United States v. Johnson, 67 F.3d 200, 202 (9th Cir. 1995)).

Furthermore, despite the petitioner's argument to the contrary, enforcement of the collateral review waiver does not result in an unjust outcome.  In another recent case, the Fourth Circuit reinforced the notion that "a defendant who waives his right to appeal for the purpose of obtaining concessions from the government 'may not . . . ignore his part of the bargain.'" United States v. Blick, 2005 U.S. App. Lexis 9742, at *13 (4th Cir. May 27, 2005) (quoting Wiggins, 905 F.2d at 54)).  Holding a defendant to the plea agreement he entered into is not inequitable because, "unlike a defendant who is sentenced after trial, a defendant who enters a plea bargain has some control over the terms of his sentence[.]" United States v. Brown, 232 F.3d 399, 406 (4th Cir. 2000).  The court finds that a greater injustice would result in allowing the petitioner to take advantage of the provision of the Plea Agreement that resulted in the dismissal of the remaining counts of the indictment, without holding him to the provision in which he waived his right to collateral attack.  See Price, 959 F. Supp. 310, 315 (E.D. Va. 1997) (observing that justice is frustrated by allowing habeas petition to receive the benefits of the plea agreement without being held to his commitments pursuant to that agreement).  Such an outcome would

result in a windfall to the petitioner.  See United States v. Sahlin, 399 F.3d 27, 31 (1st Cir. 2005)

(noting that plea agreement allocates risks, including possibility of favorable change in law).

Accordingly, the court finds that the petitioner has not overcome the burden of procedural

default for the court to entertain any claim that his waiver of his right to make a collateral attack

was unknowing or involuntary.  As such, the court could not enforce the government's agreement

not to further prosecute the petitioner for the specific conduct described in the indictment without

giving weight to the collateral attack waiver.   Moreover, though the court has decided this matter

on alternative procedural grounds, this waiver also acts to prevent the court from engaging in a

review of the petitioner's Walters claim on its merits.

## III. Conclusion

Despite the likely retroactive effect of the decision of the Court of Appeals in Walters on

the charges to which the petitioner did plead guilty had he overcome the hurdles of procedural

default, the outcome of this case is fair on both substantive and procedural grounds.  The reliance

on the doctrines of timeliness and procedural default further the necessary goal of finality in

convictions.  And the petitioner's failure to establish his actual innocence of Counts 29-43 of the

indictment and the likelihood that a sentence pursuant to a conviction on these dismissed counts

would have been substantially the same as the sentence currently imposed reveals that even had

the court reviewed the petitioner's claim on the merits, no error in sentencing has occurred that

would warrant collateral relief.

For these reasons, the court determines that it cannot engage in further consideration of the

petitioner's claim on the merits.  See Bousley, 523 U.S. at 621 (noting that even though habeas

petitioner's claim was not Teague-barred, procedural concerns could bar its further review).

The result of this decision may appear unsettling, due to the fact that procedural devices act to prevent consideration of a possibly legitimate substantive claim. The impression may be left that form is exalted over substance. Any such impression, however, would fail to take into account the important policy concerns that the procedural doctrines at issue serve. The procedural requirements discussed in this Order stem from the Congress's clearly articulated intent to encourage finality in criminal convictions and reduce the number of claims being litigated on collateral review. Price, 959 F. Supp. at 315. "Finality in the criminal law is an end which must always be kept in plain view." Mackey v. United States, 401 U.S. 667, 690 (1971). As one court in this district has observed, "Congress clearly intended that not all prisoners affected by statutory reinterpretations would be allowed to seek collateral relief." Id. To this end, the "enactment of the AEDPA demonstrates that the proper focus should be [on] the nature and propriety of habeas relief, not the underlying arguments that a petitioner asserts." Id.

Finally, the court, in its discussion of the petitioner's actual innocence argument, has essentially addressed the petitioner's substantive claim. Although the retroactive effect of Walters would act to invalidate the petitioner's convictions on Counts 14 and 19, it would have no impact on Counts 29-43. Had the petitioner been found guilty on these counts, it is likely that the same sentence would have been imposed. Although the remaining counts of the indictment were dismissed pursuant to the Plea Agreement, the defendant cannot rely on this provision while, at the same time, seeking to except himself from the provision whereby he waived his right to collateral review of his conviction or sentence. See Price, 959 F. Supp. at 318.

_____ As Justice Scalia opined in his dissent in Bousley:

It would be marvelously inspiring to be able to boast that we have a criminal-justice

31

> system in which a claim of "actual innocence" will always be heard, no matter how late it is brought forward, and not matter how much the failure to bring it forward at the proper time is the defendant's own fault.  But of course, we do not have such a system, and no society unwilling to devote unlimited resources to repetitive criminal conduct ever could.

Bousley, 523 U.S. at 635.  Although procedural doctrines bar consideration of the petitioner's claim, the court concludes that this outcome does not result in the conviction of one who is actually innocent.  As the foregone, yet evidently valid, charges against the petitioner could have lead to the same sentence, exceptional circumstances do not exist that would cause the court to revisit the petitioner's sentence.  See Maybeck, 23 F.3d at 894.

Accordingly, the section 2255 petition is hereby  **DENIED** and **DISMISSED** in its entirety.  Finding no substantial issue for appeal concerning the denial of a constitutional right affecting the conviction, nor a debatable procedural issue, a certificate of appealability is **DENIED**.  See Miller-El v. Cockrell, 537 U. S. 322, 336 (2003); Slack v. McDaniel, 529 U. S. 473, 484 (2000) ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further.").

The petitioner is **ADVISED** that he may appeal this denial of a certificate of appealability by forwarding a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia, 23510 within sixty (60) days from the date of this Order.

The Clerk is **REQUESTED** to mail a copy of this Order to the petitioner and to the United States Attorney, Eastern District of Virginia, World Trade Center, Suite 1800, 101 West Main Street, Norfolk, Virginia 23510.

**IT IS SO ORDERED.**

_____
/s/
Jerome B. Friedman
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
June 9th, 2005